IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN
_____

JOAN A. SCHMITZ,

                Plaintiff,

  v.                                 MEMORANDUM AND ORDER

CITY OF EAU CLAIRE,                 07-C-183-S

                Defendants.
_____

    Plaintiff Joan A. Schmitz commenced this civil action under the Americans with Disabilities Act (ADA) alleging that the defendant discriminated against her on the basis of her disability and retaliated against her for complaining about disability discrimination.

    On September 5, 2007 defendant moved for summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure, submitting proposed findings of fact, conclusions of law, an affidavit and a brief in support thereof. This motion has been fully briefed and is ready for decision.

    On a motion for summary judgment the question is whether any genuine issue of material fact remains following the submission by both parties of affidavits and other supporting materials and, if not, whether the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure.

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.  An adverse party may not rest upon the mere allegations or denials of the pleading, but the response must set forth specific facts showing there is a genuine issue for trial.  Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

There is no issue for trial unless there is sufficient evidence favoring the non-moving party that a jury could return a verdict for that party.  If the evidence is merely colorable or is not significantly probative, summary judgment may be granted.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

FACTS

For purposes of deciding the defendant's motion for summary judgment the Court finds that there is no genuine dispute as to any of the following material facts.

Plaintiff Joan A. Schmitz is an adult resident of Eau Claire< Wisconsin.  Defendant City Of Eau Claire Wisconsin is a municipal corporation organized and existing under the laws of the State of Wisconsin.

Mary Hanson was employed with the City of Eau Claire Parks and Recreation Department as the Superintendent of Recreation.  She was

directly responsible for the City's softball program. Ronald Deutsch was the Umpire in Chief. Jenny Vick was the umpire scheduler and game assignment coordinator. Umpires for the City of Eau Claire Parks and Recreation softball leagues are part-time seasonal employees and are paid on a flat rate per game basis.

Plaintiff began her employment with the City of Eau Claire as an umpire in 1998. In 1999 plaintiff umpired 24 games. In 2000 she umpired 28 games. In 2001 she umpired 52 games. On October 3, 2001 plaintiff was involved in a motorcycle accident in which she was hit by a drunk driver. As a result of the accident her left arm and left leg were amputated.

In 2002 plaintiff was assigned a partner to umpire softball games due to her limited mobility. In 2002 plaintiff umpired 31 games but wanted to umpire more games. In 2002 Ron Deutsch did not want plaintiff working because of her handicap. Plaintiff was not chosen to umpire the year end tournament for coed softball teams in 2002.

On March 11, 2003 plaintiff filed a disability discrimination complaint against the City of Eau Claire Parks and Recreation Department with the Equal Rights Division (ERD). She alleged that the City would never allow her to umpire a game by herself because of her disability.

In early 2003 Hanson instructed Vick to schedule Schmitz for a minimum number of games because the City felt plaintiff was

3

umpiring as many games as she could physically handle and for safety and liability reasons. In 2003 plaintiff umpired 27 games.

Plaintiff was not allowed to umpire games in 2003 before she was evaluated. On May 29, 2003 plaintiff was evaluated by a neutral evaluator, Dick Buskov, while she was umpiring a coed slow pitch game. Mr. Buskov gave plaintiff a positive evaluation and she was then scheduled to work municipal games herself.

On June 2, 2003 plaintiff filed a second discrimination complaint with the ERD alleging retaliation by the City of Eau Claire Parks and Recreation Department. She alleged that Mary Hanson had her abilities evaluated by a neutral evaluator. On December 11, 2003 plaintiff amended this complaint to allege that after she filed her discrimination complaint the number of games she was scheduled to umpire was reduced.

On July 29, 2003 Kayla Iverson wrote a letter to Mary Hanson complaining that plaintiff had made questionable and confusing calls during the previous night's game. She also complained about plaintiff's unnecessary comments during the game. On July 29, 2003 Jason Christopherson sent a letter to Mary Hanson complaining about plaintiff's confusing calls and constant chatter in the same game.

On July 29, 2003 Hanson sent plaintiff a letter expressing concerns about her job as an umpire. The letter discussed the following incidents: 1) telling the catcher on June 18, 2003 that you disliked player Tony Navarre; 2) an incorrect call in the June

4

18, 2003 game; 3) wearing a necklace which was not allowed on July 16, 2003: 4) allowing a team to play with more men than women in a coed game on July 22, 2003 in violation of the rules; 4) not being considered registered July 21, 2003 as an umpire because her registration check bounced and 5)the complaints concerning the July 28, 2003 game received from Iverson and Christopherson.  The conclusion of the letter stated as follows:

> Your conduct has been unacceptable and can no longer be tolerated.  This letter is to serve as a final warning.  If there are any additional concerns you will be removed from your position as an umpire.

Plaintiff was not assigned to umpire the 2003 men's league tournament because she had previously stated that she did not want to umpire men's league games.

After July 29, 2003 two additional concerns were raised to Mary Hanson:  that plaintiff's dog barked continuously throughout the game and that she took off her uniform pants at home plate. Hanson did not advise plaintiff of these concerns.

In the spring of 2004 Mary Hanson decided that the City would not re-hire plaintiff as an umpire for the 2004 season.  Plaintiff was not hired to umpire any games in the 2004 season.  On March 16, 2004 the defendant's attorneys wrote to plaintiff's attorneys stating that plaintiff would not be re-hired in 2004 because of her unacceptable performance.

On January 2, 2005 plaintiff filed a second retaliation complaint with the ERD concerning the City of Eau Claire's refusal to rehire her.

## MEMORANDUM

Plaintiff claims that the defendant discriminated against her because of her disability.  She contends that she suffered adverse employment actions when the defendant limited the number of games she was allowed to umpire in 2002 and 2003, including not allowing her to coach until an evaluation was completed in 2003 and not allowing her to coach the coed tournament in 2002; requiring her to have a partner in 2002; requiring her to have an evaluation in 2003 and failing to re-hire her in 2004.

Defendant's actions in limiting the number of games plaintiff could umpire in 2002 and 2003 and failing to re-employ her in 2004 are adverse employment actions.  Defendant's actions in requiring her to have a partner in 2002 and requiring her to be evaluated are not adverse employment actions because they did not materially change the terms and conditions of her employment. See Cerros v. Steel Technologies, Inc., 288 F.3d 1040, 1044 (7th Cir. 2002).

The Americans with Disabilities Act (ADA) prohibits discrimination against a qualified individual with a disability. 42 U.S.C. §12112(a).  A disability is defined as a physical or mental impairment which substantially limits one or more of a person's major life activities.  42 U.S.C. §12102(2).  These

activities include caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working. 29 C.F.R. §1630.2(j). The parties have stipulated for the purposes of trial that plaintiff is a qualified individual with a disability.

To prevail on her disability discrimination claim plaintiff must either present direct evidence of discrimination or use the burden shifting method provided in McDonnell Douglas v. Green, 411 U.S. 792 (1973). Under the direct method of proof, a plaintiff can use either direct evidence or circumstantial evidence to meet her burden of proof. Direct evidence is an admission by the decision-maker that his or her actions were based upon the prohibited animus. Rogers v. city of Chicago, 320 F.3d 748, 753 (7th Cir. 2003). A plaintiff can prevail under this method by presenting circumstantial evidence that would allow a jury to infer intentional discrimination by the decision-maker. Rhodes v. Ill. Dep't of Transp., 359 F. 3d 498, 504 (7th Cir. 2004).

There is evidence in the record that the defendant limited the number of games plaintiff could umpire in 2002 and 2003 because of concerns about her disability. Specifically, Deutsch, who was not a decision-maker, stated that he did not want plaintiff umpiring became of her handicap. In addition, Hanson, the decision-maker, told Vick to limit the number of games plaintiff umpired in 2003 because of her physical condition. It is possible that a jury

7

could infer that the decision maker discriminated against plaintiff based on her disability.

To prevail on disability discrimination using the indirect method of proof plaintiff must first establish a *prima facie* case of discrimination.  Then defendant may articulate a legitimate, non-discriminatory reason for its employment decision.  The plaintiff must then prove that defendant's reason is pretextual for discrimination.  St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993).

To establish a *prima facie* case of employment discrimination plaintiff must show that she was a member of a protected class, that she was performing her job satisfactorily, she suffered an adverse employment action and employees not in the protected class who were similarly situated were treated more favorably. Morrow v. The Wal-Mart Stores, Inc., 152 F.3d 559, 561 (7th Cir. 1998).

Plaintiff received a July 29, 2003 letter from Mary Hanson outlining some performance problems.  This was a final warning letter and not a termination letter.  Yet plaintiff was not re-hired in 2004 based on additional concerns of which plaintiff was not advised.  It remains in dispute whether plaintiff was performing her job satisfactorily in 2003.  It is difficult to determine from the record whether other umpires not in plaintiff's protected class were treated more favorably than plaintiff.

Had plaintiff been able to establish a *prima facie* case defendant may articulate the legitimate, non-discriminatory reason for its actions. Defendant contends that it failed to hire plaintiff for the 2004 season because of performance issues and limited her games in 2002 and 2003 because of safety and liability issues.

Plaintiff contends that these are not the real reasons and are pretextual for disability discrimination. Plaintiff contends that her games were limited in 2002 and 2003 because of her disability.

Plaintiff contends that the July 29, 2003 letter from Hanson to plaintiff stated that it was the final warning. Plaintiff claims, however, that there had been no previous warnings concerning her performance. Plaintiff also contends that she was not rehired in 2004 because of additional incidents that occurred after the July 29, 2003 letter of which she was not advised before she was not rehired.

There remains a genuine issue of material fact concerning pretext. In addition, as stated above, it is possible that a jury could infer that the decision maker discriminated against plaintiff based on her disability based on direct and circumstantial evidence. Defendant's motion for summary judgment on plaintiff's disability discrimination claim will be denied.

Plaintiff also claims that the defendant terminated her in retaliation for opposing unlawful discrimination. To prevail on her retaliation claim plaintiff must show that her termination would not have occurred but for her opposition to unlawful discrimination. Gleason v. Mesirow Fin., 118 F.3d 1134, 1146 (7th Cir. 1996).

Plaintiff filed discrimination complaints with the ERD on March 11, 2003 and on June 2, 2003. She amended her June 2, 2003 complaint on December 11, 2003. Defendant limited the number of games plaintiff umpired in 2003 and failed to re-hire her as an umpire in 2004. It remains disputed whether these actions would not have occurred but for her opposition to unlawful discrimination. Defendant's motion for summary judgment on plaintiff's retaliation claims will be denied.

Defendant's motion for summary judgment on plaintiff's disability discrimination and retaliation claims will be denied concerning its actions limiting the number of games she could umpire in 2002 and 2003 and failure to rehire in 2004. Defendant's motion for summary judgment on plaintiff's claims concerning its actions requiring her to have a partner in 2002 and requiring an evaluation in 2003 will be denied.

<u>Schmitz v. City of Eau Claire</u>, 07-C-183-S

ORDER

IT IS ORDERED that defendant's motion for summary judgment on plaintiff's disability discrimination and retaliation claims concerning its actions limiting games she umpired in 2002 and 2003 and failing to re-hire her in 2004 is DENIED.

IT IS FURTHER ORDERED that defendant's motion for summary judgment on plaintiff's claims concerning its actions requiring her to have a partner in 2002 and an evaluation in 2003 is GRANTED.

Entered this <u>16th</u>  day of October, 2007

BY THE COURT:

/s/

_____
JOHN C. SHABAZ
District Judge